May it please the Court, Gail Ivins, appearing on behalf of Defendant Appellant Umberto Hernandez-Vasquez. Your Honors, this case raises a multitude of issues, some of which might be more appropriate for a law review article than an argument in ten minutes this morning. But I wanted to start today with the inadequate Feretta waiver. Um, this is a difficult case. Um, I again understand the District Court's frustration with the process. He referred Mr. Hernandez-Vasquez for competency determinations three separate times between the 2011 and 2015 cases. He couldn't get a lot of sense out of him in terms of asking him questions and trying to get him to sort of be with the program. No lawyer made Mr. Hernandez-Vasquez happy. Um, and, you know, I suspect, as is indicated in the third of the psych reports that were prepared at the, um, MCC, um, that some of that might be due to his, uh, mental illness. Um, his inability to get along with counsel. His inability to understand, which frankly, Your Honors, is actually difficult for lawyers to understand how, um, in a 1326 case, your prior deportation can hurt you three different times. It's not, you know. But wasn't he, um, really trying to get a better deal with each lawyer? And in addition to that, he, I think he thought maybe a new lawyer would get a better deal for him. So he was unhappy with the deal. He, um, was unhappy with the way the government is able to incorporate and increase the penalties for each, uh, additional, uh, illegal entry. And so nothing was going to make him happy. Um, and I, it seemed as though Judge Hayes, um, spent a lot of time with him. Um, and, and pretty thoroughly covered the requirements of FRERTA. And I think that's correct, Your Honor. From the perspective of what the court did, the court did a lot. From the perspective of us being able to look at the record and say that that waiver was knowing, intelligent, voluntary, you know, I, I don't know that the record supports that. I, I mean, I think, unfortunately, the judge did a lot of talking without letting Mr., um, Hernandez-Vazquez really continue his very fixed idea about the situation. Okay, but didn't he, didn't he say, um, if this is the lawyer I have, I want to represent myself? And he was pretty clear on that. He was very clear on that, but he also said, but I don't want to go to trial. That's true. And so he was very clear. Like, if these are my choice, well, and that was after it was suggested. I mean, he, he is not one who came into court as many, many defendants do, and said, I want to represent myself. I have that right. Again, it was something that was suggested to him. The, the lawyer, I think it was the lawyer who said, I think he might want to represent himself. Oh, you want to represent yourself. Well, I'm going to need to get an exam. They did that, and they talked about it. And he never really said, I'm prepared to represent myself at trial because you won't give me the counsel of my choice. Um, which is, I think, part of his very fixed misunderstanding of the situation. And I think that's true. Um, his understanding, which I get, I've been doing this for a very long time, and I find 1326 and priors complicated, and I call expert help. That's why we have immigration lawyers in federal defender offices now, is to help us with some of these cases. Um, you know, his, his fixed understanding that, you know, I know what I did, and there's a penalty for that, but I've already been punished in Texas. Like, I got, I got more time than I got in Texas for the same re-entry. It seems like a reasonable question that could be explained to him, um, but he wasn't getting it. So what's a trial judge to do in this kind of situation? Um, because he had had, I think, the lawyer that was with him at that point was his, was the third person that had been assigned to his case. Uh, and I've never heard of a situation where a trial judge gave a defense lawyer, um, at least under, you know, different circumstances. I mean, this is not really an issue on this appeal yet. It would be if we get a remand. I mean, I think I put in a footnote that I think what should have happened is that the defense lawyers should have done a better job of trying to figure out what the real problem was, and they should have gotten a confidential psych report, um, and used the information that they could find out what the real problem was. I mean, the third psych report talks about the fact that he gets confused in court, things go too fast for him, and he's scared to ask for clarification. But that's not, that's not going to change, is it? Well, I don't know. I, maybe I could get someone who's representing the interests of the defendant rather than the interests of the court, which is perfectly appropriate to have someone represent the interests of the court and do an evaluation for competency. But I think it behooves defense counsel to when they are faced with someone who is intractable and has a very low IQ and is confused and is obstinate and difficult, I mean, it screams mental health issue. And I think lawyers have a... And there was some mental health issues, but not to the degree of what Indiana versus Edwards. Well, are we sure? Because he's got schizophrenic affective disorder, unspecified anxiety disorder, unspecified anxiety disorder, unspecified... It's because he doesn't... The psychiatrist thought he didn't have enough to 100% make that diagnosis. So I don't know that he isn't an Indiana Jones, Indiana versus Edwards gray area defendant. Certainly his behavior at the actual trial suggests that it was a travesty and that he should not have been representing himself. He was confused. And now we get back to the McCaskill issue from the trial. In a sense, like between a rock and a hard place, either... There's two kinds of competency. One competency for trial to face the case, and then there's competency to represent yourself. And so really the judge had to decide whether that Sixth Amendment right to self-representation is almost absolute versus whether or not he should... Because the defendant wasn't a very good lawyer for himself and had a few mental issues, whether he should deny him that right to represent himself. And so the Sixth Amendment right, I thought, was the stronger one. What's your kind of response to that kind of catch-22 the trial judge is in? And now we've gotten to the larvae article part of the argument. Indiana versus Edwards pulls back, even though they say they're not. I mean, for pages, they say they're not. They pull back on Godinez versus Moran to basically allow for the possibility that there are people who have mental illnesses who really it denies them a fair trial to let them represent themselves. And it's only gone as far as to say it's up to the district court or the state court to decide. And in this case, the judge's order said that there was nothing that overcame it. So it is not a model of clarity that he considered him. Although he was a gray area defendant, he was exercising his discretion to deny him a lawyer. So I think that's problematic. I think the district court judge did not 100% understand totally reasonably, it's a complicated area as well, you know, did not 100% understand what his authority was to say you're a gray area defendant. I've got a psych report that says you're not competent to represent yourself. You have not demonstrated to me competence to represent yourself. You have mental illness issues. You've got a DSM-5 diagnosis. I could deny you the right to self-presentation, and I do not. So he didn't ever do it that way, and I think that was the right way to do that particular part of this. But didn't Indiana v. Edwards actually deal with a situation where the defendant was suffering from a severe mental illness, whereas this defendant was not, his illnesses were not severe. And that kind of is to me a distinguishing factor from Indiana v. Edwards. Your Honor, it is on the very narrow holding. I would say that in Indiana v. Edwards, the court said mental illness is not a unitary concept. It varies in degree. It can vary over time. It interferes with an individual's functioning at different times in different ways. So I don't think that if you look at the entirety of Indiana v. Edwards, it's as narrow as the courts have made it out to be, and that is the question that underlies this, as does the waiver issue about him making a decision with his eyes open, as Feretta said. I don't think the record supports his eyes being open that he was going to represent himself at a trial rather than to try to get a better deal from the government, and I see my time is up. Thank you. Thank you. Good morning. May it please the Court, Nicole Reese Fox for the United States. As your Honors have recognized, the District Court here very carefully considered whether the defendant had unequivocally asserted his right to self-representation and assured that the waiver was knowing and intelligent, and ordered a separate competency evaluation, and then determined that the defendant was not in the gray area of the court, and therefore, under Edwards, can be denied that right to self-representation. And those decisions were not erroneous. What is the standard of review of those decisions? So it varies. The first question on the unequivocal request, it's reviewed for clear error. The knowing and intelligent waiver is a mixed question, and this question, this Court has expressly said that it hasn't decided what, if any, standard of review, or what, when, if ever, a court is required to deny a defendant the right to self-representation under Edwards. It's a permissive standard under Edwards, and as a result, has not articulated a standard of review. However, the Court does review the threshold question. Is the defendant in the gray area of the court, a semi-competent defendant for whom the Edwards standard would apply? That threshold question is reviewed for clear error. And as we argue in our brief, we think that the Court could decide the Edwards question, and should decide it at that threshold, because this defendant is not in that gray area, unlike the defendant in Edwards, who was incompetent, and then competent, was literally borderline competent. This defendant has never been found incompetent. His diagnosis of mental illness was, the first two evaluations found him to really not be suffering from mental illness. The third said there was maybe some unspecified, but that he didn't really meet the criteria. He certainly was never diagnosed with a severe mental illness, and is not in that gray area. And that question, which is reviewed for clear error, we would submit to the District Court, decided it correctly. What about the concept of a defendant being able to do the basic tasks of representing himself, like conduct a good four-year, do opening and closing, examine witnesses? What's your response to how the defendant did that in this case? Because he didn't, there was a lot of things he didn't do, and his standby counsel eventually came in and started representing him in certain ways. So, do you think he was able to do the basic tasks that the case law talks about, in terms of that issue? And Feretta and this Court's case law have cautioned against looking at what happened in trial, and with the benefit of hindsight, going back and deciding whether the District Court correctly found that the waiver was knowing and intelligent. And this Court has cautioned against looking at what happened in trial to decide if the defendant's performance was good or adequate, because Feretta itself recognizes that the defendant is often going to proceed pro se at his peril. And that's his right, and that dignity interest inherent in Feretta should not be questioned by what actually happened at trial. And to the extent that we're talking about the Edwards question, what happened at trial, whether he was capable of representing himself, what happened at trial, was a mental illness interfering with his capability to do those things. And the record here, first of all, doesn't support a conclusion that there was a severe mental illness to interfere. And to the extent that any, he did have any difficulty, the Court went through great lengths to make sure that he had the opportunity to question witnesses by ordering the government to recall witnesses, to make sure that the defendant understood he could cross-examine them, to instruct him when the jury was not in the courtroom, and to make sure that he could consult with advisory counsel. So to the extent he was disadvantaged as a pro se defendant, first of all, Feretta itself recognizes that's still his right. And the Court used the tools available to it to give him as much assistance with representing himself. And unless the Court was able to do that, it would have been a great deal of trouble. And I don't think that the Court has any other questions it would submit. All right. Thank you, counsel. Ms. Ivins, do you have a motion for rebuttal? Feretta said that the defendant was literate, competent, and understanding, and that he was voluntarily exercising his informed free will. And I don't think that was the case here. So I'd ask the Court to reverse. Thank you, counsel. Thank you.
judges: Wardlaw, Bea, Drain